Good morning. My name is Michael Burke, and I represent the petitioner-appellant Joe Clarence Smith. I'm going to attempt to reserve five minutes of my time for rebuttal, and we'll try to keep track of that. With the Court's permission, I would like to address three issues today that apply with equal power to both of the death sentences that are facing Mr. Smith. And those three issues are, first, did the Arizona Supreme Court violate the Eighth Amendment and due process in its failure to narrow the E-2 aggravator in this case, which is the claim or the aggravator that he had a prior conviction involving the use or threat of violence? The second issue is related. Did the Arizona Supreme Court fail to sufficiently narrow the E-6 aggravator, which was the cruel, heinous, and depraved? And finally, I'd like to address the question of the district court's denial of evidentiary hearing for Mr. Smith on the ineffective assistance claim at the penalty phase. And I'm aware the Court has asked the parties to be prepared to address the Confrontation Clause issue, and both parties have submitted 28 J letters, and I'm happy to address any questions that the Court has on that particular issue. As the Court is aware, that claim goes solely to the death sentence involving the murder of Neva Lee and not that of Sandy Spencer, which is why I would prefer to address the other issues. I would make two brief comments about the Confrontation Clause claim. One, as we noted in our 28 J letter, we are arguing that the Arizona Supreme Court committed a 2254d2 error in its analysis of the Confrontation Clause claim. If the Court were to agree, the existence or nonexistence in this case of clearly established Federal law on whether the Confrontation Clause applies in a capital sentence in context would not matter. This Court could consider that question de novo, and both parties have submitted cases that would address that. One other point I would like to address is that there is much discussion in the briefing about autopsy reports and coroner reports and the admissibility of those. In this case, although that is a factor, we have to remember also that Dr. Keene, the medical examiner who testified, also relied on prior testimony, prior in-court testimony from Dr. Karnyshnik, who was the original medical examiner. So we have not just the question of is an autopsy report testimonial, we actually have in-court testimony. But Dr. Karnyshnik, Dr. K, Dr. K, Dr. Karnyshnik, his prior testimony wasn't admitted into evidence. Well, Your Honor, it was not admitted in toto, but he, Dr. Keene said that he had read, that he had read it. He had read it, and then he proceeded to reference specific findings by Dr. K regarding the timing of wounds, the depth of wounds. I thought he disagreed with regard to timing. Excuse me? Didn't Dr. Keene disagree with regard to timing? So he referenced it, but I'm not sure that's the same as incorporating his testimony. Right. He did disagree with whether some of the wounds were antemortem or postmortem or perimortem. That is correct. To that extent. But there's certainly, there were references, and that's the point that you were trying to make. There were. And I don't want to give short shrift to this issue, which I think is meritorious. Again, though, were this Court to agree with me, my client would still be facing a sentence of death, which is why I would like to address the aggravators in this case. The we have argued that the aggravating circumstance that is, was set forth at 13452E2 in this case, the previously convicted of a felony involving the use or threat of violence is unconstitutionally vague. Now, as, by way of background, this particular aggravator was repealed by the Arizona legislature over 20 years ago. It is not an aggravator that is now given to juries. Today, the equivalent aggravator is that the defendant was previously convicted of a serious offense, and the statute then proceeds to specifically identify what constitutes a serious offense. Here, however, the question presented to the jury, was Mr. Smith convicted of a previous crime involving the use or threat of violence? And as the Court is aware, the district the government relied on the murders of the victims and the other cases as that crime. The Arizona Supreme Court, pursuant to its obligation under the Eighth Amendment to narrow its aggravating factors, has long held that that particular aggravating circumstance can only apply when the language of the statute governing the offense necessarily requires the use or threat of force. And in this case, the jury was instructed that, excuse me, yes, that violence is the exertion of any physical force. We have argued that, as contrary as it might seem to a layperson or even to a lawyer, murder, first-degree murder, under the Arizona statute as it read at the time of the case, is not necessarily a crime that involved the use or threat of violence. It's sort of like asking the jury to apply what we have to apply as the categorical approach, which, frankly, sends me through the looking glass as a judge sometimes. So I share your bemusement that a jury is asked to answer that question, but in fact, that appears to be the state of the law, at least at the time. It was, Your Honor. That, well, that was the state of the law at the time. I would also, I mean, as the Court is well aware, with regard to the categorical approach the United States Supreme Court has recently held in Johnson, that that similar language in that statute is unconstitutionally vague. Here, the government is arguing that the issue is only one of State law, that the Arizona Supreme Court is entitled to interpret its own aggravating factors and decide what applies under a particular factor. I mean, the Supreme — the U.S. Supreme Court appeared to say okay to the system Arizona adopted, albeit at a time when the decision-making was made by a judge rather than a jury. And therein lies, I think, my problem, because I can't find a Supreme Court decision that says the procedure is not okay when it's done by a jury. Don't I have to find that? With regard to the — I disagree, Your Honor. I don't believe you actually have to find that. What we have to prove is that the Arizona Supreme Court's ruling with regard and this goes to the cruel, heinous, and depraved factor, aggravating factor, is that its reliance on Walton was appropriate. And what we have here is both the Arizona Supreme Court and the district court giving you only a flat-out citation to Walton. The argument was post-Ring, Walton is no longer a valid support for the fact that the cruel, heinous, and depraved aggravator is not unconstitutionally vague. And to simply rely on Walton, which holds that, in fact, it is unconstitutionally vague and only survives that unconstitutionality because judges were doing the sentencing at the time and judges were able to access the extensive case law that might — But the Court talks about how the Arizona Supreme Court narrowed the term and defined it and gave it meaning. It did. And in — Jurors can be instructed along those same lines. And in this case, Your Honor, we have submitted that they were not properly instructed along those same lines. So even if the Jeffers decision sort of lays out the process under the Eighth Amendment, whereas the court, the State courts can narrow an aggravating factor first by properly defining it and limiting it, and then applying that limitation in the individual case. And in this case, the instructions given to the juries, and they were identical for both sentencings, were horrifically vague. Let me give you an example. The jury was instructed, and this is at ER 475, 476, which is with the instructions and, again, the instructions were the same as to both. The jury was instructed that the elements of cruel, heinous, and depraved are separate elements, disjunctive, and that finding either or any one of them was sufficient to find the E6 aggravating factor. It's interesting on page 46, it says the jury was instructed in order to find heinousness or depravity, you must find that the defendant had a mental state as exhibited by engaging at least one of the following actions. One, infliction of gratuitous violence on the victim, and two, needless mutilation of the victim's body after death. The jury was not instructed what those findings went to. If the jury found one or both of those, were they supposed to find that the crime was heinous or were they supposed to find that it was depraved? Because they had been told that those were separate, separate factors all under one giant umbrella of cruel, heinous, and depraved. So right there we know that the juries in this case were not properly instructed under the limiting instructions or the limiting interpretations that the Arizona courts had developed. Also, the jury was instructed with regard to cruelty that a defendant, that they must find that the defendant either knew or should have known that the manner in which the crime is committed would cause the victim to experience physical pain or mental anguish. And one of the critical roles of aggravating factors, the most critical role, is to identify those first-degree murders that are different from the vast majority of other first-degree murders. So those are the first-degree murders in which the death penalty can be inflicted. This definition of cruelty essentially defines any first-degree murder, and almost except for the rare exception, a victim in a first-degree murder will feel physical pain and or will experience some mental anguish. That was all the jury in this case was required to find. And we submit to the Court that that is not sufficient narrowing under the Eighth Amendment. So even if a jury could make these findings in the normal case, they were certainly not properly instructed in this case. The E-2, our position then is that on both the E-6 and E-2, that the Arizona Supreme Court failed to properly narrow, the trial court failed to properly instruct. And if this Court were to find that, it would necessarily need to grant the writ as to both the Spencer and the Lee sentences. The other issue that I would like to address with the Court is the question of ineffective assistance of counsel. That was a claim that was procedurally defaulted in State court. The post-conviction counsel, which in Arizona claims of ineffective assistance of counsel must be brought in what's called a Rule 32 proceeding, a post-conviction of assistance of counsel. Instead, what he did was he argued that evidence that he had discovered through experts that he had retained, and this evidence was a PET scan and a DTI scan, which is a detailed form of an MRI, showed that Mr. Smith had organic brain damage. And he argued to the State court that this was newly discovered evidence. And because he so argued and because he conceded that he was not raising an ineffective assistance of counsel claim, it placed his claim under a much higher standard that he had to prove. And we submit that a minimally competent post-conviction attorney in a capital case would know that this is where you raise claims of ineffective assistance of counsel. And so we believe that we have set forth a colorable claim that there is cause and prejudice to excuse our procedural default of the claim, of the underlying IAC claim. And if we have, then we should be entitled to a de novo review of that claim, which means that we should be entitled to an evidentiary hearing. But what we have here is the district court essentially conducting a, it's a merits review of our underlying IAC. Well, that's the way you do it. This is a Martinez. The only way you get this, you're able to raise this is through Martinez. You're right, Your Honor. And under Martinez, as this Court has said in Dickens and in Dietrich, what we need to be able to do is establish a colorable claim of ineffective assistance of post-conviction counsel. A substantial claim. Well, that would be a substantial underlying claim. You're correct. Which would only be the standard necessary to obtain a COA. It's a very minimal standard. And in this case, we had to be able to do that. I'm not so sure it's that simple, but that's another digression. Well, and I will agree, Your Honor, and I think this Court's own opinions indicate that Martinez is difficult to apply. And what is the standard that needs to be proven? Probably have to bore down to the trial. Yes, absolutely, Your Honor. And in this case, we have the district court making what are essentially factual findings based on very little evidence. We were never able to develop any of the evidence that would support this. What the district court basically concluded is that the additional evidence that was discovered in post-conviction was merely cumulative and wouldn't have made any difference. But we're talking about very detailed, very specific medical evidence, which the district court was not qualified to decide on its own. We don't know today exactly what the significance of those findings of organic brain damage are. We do know that this Court and the U.S. Supreme Court has held that evidence of organic brain damage is more compelling, significantly more compelling than other types of mitigating evidence. And in this case, the lead mitigating are Dr. Rule Pine. This particular evidence and how it could have been utilized at the trial. At the sentencing. That Dr. Rule Pine, and there was a report that was submitted with the PCR petition that there was evidence of frontal lobe organic brain damage. And then he opined, and I have to be completely honest, Your Honor. It's in medical speak. So even when I read it, I'm not entirely sure of the extent of it. But I do know that damage to the frontal lobe is the frontal lobe is the part of the brain that takes care of executive functioning, the ability to reason, the ability to think through things. And we know, based on this evidence, that there, we have evidence that there is brain damage in this case. And we know, and trial counsel knew, that Mr. Smith was involved in a terrible car accident when he was merely an infant in his mother's lap. Which would suggest that there was reason to further investigate this. The district court dismissed all of this by saying ten experts have already checked out Mr. Smith, and none of them suggested this. Which is, I submit, if you look at what those ten experts are, it's completely insupportable for the proposition that the district court is using it. There were ten experts, and I've gone through and looked. Of those ten experts, we have four of them were, well, eight of those ten were experts who were retained by the courts in various proceedings to do competency evaluations, which is a much different animal than doing a mitigation investigation as a defense lawyer. Four of those were done for cases prior to the cases we're talking about here. They were earlier crimes that Mr. Smith was convicted of, and they were done in some instances only to determine his probation, whether he would receive probation or not receive probation. So that takes care of eight of them. The other two, one is a doctor that was retained by our office when we first represented Mr. Smith back in the 1980s, a psychologist who, despite, you know, I'm not questioning my colleague's, you know, decision to hire this man, and the judge would not be able to necessarily, would not be able to identify brain damage. And the other one, a Dr. Goldberg, this Court expressly held in the prior decision in this case from 1999, the trial counsel was ineffective for relying on Dr. Goldberg's testimony. Roberts. And then they went out and they got Dr. Parrish. They got Dr. Parrish, a neuropsychologist, who identified that Mr. Smith had brain impairment, and which would have led a reasonably competent attorney to realize we need to, if at all possible, find the source of. Is there anything in the record that suggests that she thought that a PET scan was appropriate? There is nothing in the record that suggested that she recommended that one be obtained. We don't know, Your Honor, though, what Dr. Parrish told counsel in this case. We know what she testified to in court, and we know what's in her report, which is the very reason why Mr. Smith is entitled to an evidentiary hearing, which is all at this point he is asking for. I mean, we are making suppositions and we are guessing as to what the evidence was, but he has made a colorable claim that would entitle him to an evidentiary hearing in this case. So that is why I can't answer your question more fully. If the Court has no questions, I will – this was all I was wanting to address today, so I will reserve the remainder of my time. Thank you. Thank you, Your Honor. May it please the Court. My name is John Anderson, representing Respondents, and I will briefly address the first issue, the Crawford issue. Petitioner seems to admit that there is no clearly established law that would make the Arizona Supreme Court or State court's determination unreasonable. He hinges his claim on there being an unreasonable determination of fact, but that the alleged unreasonable determination of fact regarding whether it was a conduit was determined in connection with the State law issue. That wasn't the Arizona Supreme Court deciding the constitutional issue. That was the State law issue of whether this is proper expert testimony under Rule 703. So it can't be an unreasonable application, an unreasonable determination of fact on a Federal issue when it wasn't even made in the context of that issue. Secondly, in Lopez v. Smith, the United States Supreme Court told the Federal courts, including this Court, that you can't just relabel something that's really a determination of law as a determination of fact. In Lopez, it was a determination of adequacy of notice. In this case, the determination that whether or not there was a conduit for admitting prior testimony, that's a very similar legal issue. So it's really a legal issue that goes back into D-1. Thirdly, it was a reasonable issue that King was opining on. The Arizona Supreme Court was deciding, I'm sorry. Well, it was deciding the issue of whether it's a conduit. It seems like it's a factual issue. But the problem is that it's not a typical factual issue because it requires looking at many, many factual issues. What did Dr. Carnice say about this? The problem that bothers me here with this argument is there really is no claim that there was an improper fact-finding process in this particular proceeding. I mean, the facts were developed. Right. And basically, the problem with the argument that I see is that he's basically just asking us to give a different gloss. Right. That's what the Arizona Supreme Court said. And that's very difficult. I agree. I think we're on the same. That's very difficult. It can be done in appropriate circumstances. We have case law to that effect. Right. It is very difficult. The D2 standard is very difficult. I mean, no reasonable fact-finder would have found it. And in this case, there wasn't a conduit. Keen wasn't a conduit because the autopsy report itself wasn't admitted. Indeed, it didn't even exist. All they had was a cover page that had some very general conclusions. So that shows that it wasn't a conduit. And also that Keen wasn't a conduit is shown by the fact that he actually disagreed with Dr. Carnice on some points. And he was very clear about what he could reach an independent opinion about. Several times in his testimony, he talks about this is my independent opinion. I can't say anything about that. Dr. Carnice's report that he talked about was primarily measurements of the wounds. Well, measurements of the wounds doesn't really have anything to do with whether or not it's a cruel, especially cruel, aggravating circumstance. If the Court has no more questions, I would like to say this Court did ask about whether Crawford applies to sentencing. And we both cited additional authority on that. I think it's at least there's no clearly established law that Crawford applies to the sentencing phase. I realize the cases go both ways. But this is an AEDPA deferential case, unlike the district court case that Petitioner cites, which was the district court saying before trial, we think you should apply Crawford in this case. Actually, that was a State – I mean, that was a Federal death penalty case. A Federal death penalty case. Yes, that's correct, Your Honor. So that's a distinction. There's not AEDPA difference there. Although the Arizona Supreme Court said at least in part of the sentencing proceedings, Crawford applies. That's correct. As a matter of State law, it's said in State v. McGill. The eligibility part. Right. The eligibility – yes, the eligibility phase. I think we're trying to stay a step ahead of the Arizona Supreme Court on that. But that's what we all are trying to do. If there are no further questions on the Crawford issue, I'll move on to the E-2 issue. Really, it was presented to the Arizona Supreme Court as a question of State law. Does – the issue was presented – did the – was there an abuse of discretion in denying this challenge to the E-2 aggravating circumstance? As they pointed out, the E-2 aggravating circumstance no longer exists. It's been modified to more specifically list certain crimes as serious offenses. But at worst, even if you take that State law issue, which the district court said, this is really a State law issue and we can't – I can't look at that again. But at best, it's an argument of arbitrariness that nobody can figure out what this means. And it shouldn't come to anyone's surprise that a murder, a prior murder is a crime of violence. I mean, that's – that seems fairly – Your call being on panels mystified, but ultimately reaching conclusion that attempted murder turns out not to be a crime of violence because of the kind of argument posited by Petitioner here. That is, under – and I've forgotten which of the many States the statute was, but under the statute of that State, you could accomplish murder without ever having any form of violence. The way this played out, the Arizona Supreme Court was given an argument about the use of poison, and it responded directly to that argument, saying, well, there's force involved there, too. So now we have from Petitioner a different, maybe a sharper hypothetical. And I'm sitting here looking, is this really an argument that says if that argument had been made to the jury, the jury would have been stuck because it couldn't have concluded, and perhaps the trial court would have been stuck because it would have to have concluded as a matter of law that you don't have to have force and violence to accomplish first-degree murder? Well, I think the first distinction there is you talk about attempted murder. This is actual murder. That's just my own experience. But actual. But the problem – how about the hypothetical posed by Petitioner? Suppose you've got the kid who's locked in the closet and starved to death. It still requires force because you have to keep the kid from eating. I mean, you have to, you know, lock him up and so forth. An infant can't fend for himself. So you just let the – you don't have to lock him in a closet. Just let the infant lie there neglected. Well – Welcome to the categorical approach. But, yeah, I realize that this Court has wrestled with and the Supreme Court has wrestled with the violent crime in the – I believe it's the ACCA. And the United States Supreme Court, as Petitioner pointed out, in Johnson v. United States, it held – that was a residual clause, which was even more vague. And I would argue that it's pretty hard to commit a murder without some – that argument wasn't made, but it's pretty hard to commit a murder without some force. And that's the ruling of the Arizona Supreme Court under Arizona law as to what  And that's not arbitrary and capricious. Well, the Arizona Supreme Court sought to give a more specific argument to the poison hypothetical. That's because the statute, the murder statute, actually referred to poisoning for one thing. Now we have a different hypothetical. Are we simply to shrug our shoulders and say there may not be an answer to that, but Arizona is entitled to interpret its statute the way it is? Well, I mean, that wasn't presented to the Arizona Supreme Court as a problem. It presented it to the Arizona Supreme Court. The governor, in his wisdom, elevates you to the next vacancy on the Arizona Supreme Court. And so is there an answer to that question? Is this hypothetical one that could cause a court to conclude that first-degree murder may not be a crime of force and violence? Who knows? I mean, it wasn't presented, but I would say that it still involves the use of force, as the Arizona Supreme Court discussed in Payne. If you look at the Arizona Supreme Court's decision in Payne, they said it was actually an act. Starving a child to death is actually an act, not just a lack of an act. The way this was dealt with the jury was kind of odd. The judge instructed them on the meaning and then gave it to the jury to decide. Well, what it gives them is the categorical approach. You can't look at the particular facts of the crime. You have to decide it. And I guess you have the same problem with your Federal violent crime. But it did give them the statute, and that's what the law requires. They looked at the indictment and the charges, and they have to look at that and see if it requires the use of force. Like I say, I don't think it's arbitrary to conclude that a prior murder involves the use of force. You also challenged, I guess it was, the E6 aggravation.  And, yes, I'll move on to that, Your Honor. Ruling ain't heinous and depraved. That's correct, Your Honor. And I would point out that Arizona's lucky in this respect in that its aggravating circumstance, which is the same, has been construed by the U.S. Supreme Court not once but twice in Walton and Lewis v. Jeffers. And both those cases, the Supreme Court said that the Arizona Supreme Court's limiting construction was valid as to both the especially cruel and the heinous and depraved. Now, Petitioner's complaint is that you can't just instruct the jury on a specific aggravator itself, but more was done here. It was instructed on the mental anguish. It was instructed on the physical pain and the requirement of consciousness, which is the exact definition that the United States Supreme Court affirmed in Lewis and Walton. So whether or not a jury can apply that, I mean, you assume that jurors can apply and follow their instructions. The instructions that were given here were actually correct both under Arizona law and under Lewis and Walton. And so there's no error. I mean, the limiting construction was applied. The Arizona Supreme Court only addressed the cruel. Right. It didn't address heinous and depraved. That's correct. And it does that. It looks at one that's, you know, I guess it thought it was an easier issue. But certainly there was evidence also of heinous and depravity, which under the instructions that were given in this case. And I think it's in the excerpts of record at 475, 485, and following, and 743. But they were given the limiting instruction that includes gratuitous violence and mutilation. Certainly all these stabbing wounds were gratuitous violence because she was killed by having – both victims were killed by having dirt stuffed in their mouth. And if it's not gratuitous violence, it's mutilation because, you know, if they were already dead, mutilating the dead body. So that circumstance, that aspect of E6 also exists. But the Arizona Supreme Court did, as you say, determine that on independent review, which is kind of a unique aspect of Arizona Supreme Court review, that the cruel, especially cruel circumstances existed. So that's a long answer to your question, but yes. That's okay. I understand. So if there's no more questions on E6, I will move on to the ineffective assistance of counsel argument. And I would point out that preliminarily, it's very confusing. I mean, it's been – between Dickens and all the other cases, it's been confusing as to what Martinez means. It's a very difficult question. But this Court in Claiborne kind of figured out, kind of summarized what it means. And that Claiborne's proper analysis is admitted to by Petitioner. And this Court, again, said so in Pazuto. And that analysis requires a look at three things. One, was PCR counsel defective? Was his performance prejudicial? And was there a substantial underlying claim? Well, looking at it in this case, Petitioner criticizes PCR counsel for raising this as a newly discovered evidence claim rather than an ineffective assistance claim. But that was definitely a strategic decision. Because when I responded, I was thinking ahead to federal court and thinking, this should really be an ineffective assistance question. I want it to be an ineffective assistance question, so there's a state court ruling on it. But he came back, and the reply he said, no, I'm arguing that this is a newly discovered evidence claim. So it was a strategic decision. And there was a good reason for that. Because there was no prior evidence of neurological damage. Dr. Parrish testified to that, that nobody, none of the ten doctors that had come before had found neurological damage. So we don't know what she said to counsel, but there just wasn't any evidence of neurological damage at that point. Dr. Garcia-Buenal had, I believe it was an MRI and a CAT scan done, and it came back negative. So there was no reason, no reasonable counsel under Erb versus Onowski, no reason for counsel to have sought neurological testing. And when you look at ineffective assistance ‑‑ yes, Your Honor. You said it's a strategic decision. I'm not sure what you just said matches my understanding. It may have been a calculated decision, but it isn't like he identified, okay, I've got these two options, and I'm going to elect to go the new evidence route instead of the ineffective assistance route, recognizing that new evidence route has some extra obstacles down the road. It sounds like instead he made a professional judgment that he doesn't have anything with regard to ineffective assistance of counsel. That's not a strategic judgment between two options. It's a professional judgment there's no ineffective assistance. Well, it was a choice. I mean, it was a choice between two choices. And, you know, I offered that. I said in my response, I said addressing this is ineffective assistance. He came back, no, it's not ineffective assistance, it's newly discovered evidence. So I disagree. It shows that he thought about the two, and he chose to present as newly discovered evidence. But as I point out, that was a reasonable decision because he wouldn't have had a good ineffective assistance claim because there wasn't any neurological evidence of neurological damage that would have been the basis for a good ineffective assistance claim. And it also goes to the underlying claim, whether there's a substantial claim. Now, this court in Andrews recently summarized what you have to do within an effective assistance claim. I mean, it's kind of a complicated process. You look at all the evidence that was presented at sentencing, in this case resentencing, and in this case it was pretty extensive. And the reason that this court remanded in the first place was because it felt like Smith had not gotten efficient representation at sentencing. The main reason for that was when it was remanded to the trial court and the judge determined sentencing then, defense counsel did nothing. And this court pointed out in Smith v. Stewart, it said there's a bunch of things he could have presented as non-mitigation. He had already presented Dr. Goldberg. And by the way, Dr. Goldberg was an effective expert. She testified that he's a sexually sadistic slayer. And that went to the statutory mitigating circumstance of substantial impairment, which was reasonable in Arizona law at that time. But when it was remanded, counsel didn't do any more. For instance, this court pointed out that he could have called family members, which is what he did at the sentencing in this case. He called his mother, Dorothy Smith, who testified extensively, called his sister. It also pointed out that Larry Maddox, a friend of his, could have been called. Larry Maddox was called. So if you look at the actual sentencing proceedings that occurred in this case, they were pretty substantial. And there were separate sentencings as to each defendant. Plus, Smith benefited by getting a jury trial, thanks to Ring coming in, which also caused part of the delay. So he got effective representation, substantial evidence at these resentencings, and jury trials. And then Andrew says that then you look at what could have been presented. Well, if you look at Dr. Wu's evidence, it's that he has something wrong with his brain.  From that, it would affect his ability to plan or be impulsive or so forth. But Dr. Parrish had already testified that he had disassociated. Everybody agrees that he's a sexually sadistic slayer. I mean, this is one case where I can say where all the experts agree that that's the primary diagnosis. Dr. Parrish testified at some length that she thought he had disassociated and he wasn't really in charge of himself. Dr. Moran for the State testified, no, he wasn't in charge of himself. And that was fairly presented for the jury. And I would submit that the evidence shows that this auto accident when he was an infant that would have supposedly caused impulsivity, there's no evidence of impulsivity when he was a child. He had very bad asthma, but no evidence of impulsivity or any kind of crime until he started committing these sexually sadistic crimes. And you look at, and besides looking at what was presented, and also the other neuropsychologist whose testimony was offered both in the PCR court and the district court, pretty much agreed with what Dr. Parrish had said. So that didn't really add anything. And as far as getting an evidentiary hearing, I mean, this was the only evidence that Petitioner offered to the district court. I mean, I've worked on several capital cases, and often they produce a lot more expert reports as exhibits. And then that's considered. In this case, the only additional evidence that Petitioner argued to the district court, presented to the district court, was Dr. Wu. And so that's why the court went that way. And that's how the analysis goes, what additional evidence would have been presented. And as I think Judge Paez pointed out, that's what happens in these cases in a martini. You can look at whether or not there's a substantial claim. If you look at Landrigan versus the Landrigan case before the U.S. Supreme Court, they said an evidentiary hearing wasn't required in that case. So there's been lots of cases before the Supreme Court and before the Ninth, before this Court, that have looked at it in light of what evidence was presented and not presented. And the other thing you look at under Andrews, the last part is, you look at the whole case. I mean, there were two murders here, which the Supreme Court in Wong versus Belmonte says is one of the most substantial aggravators or rebuttal of mitigation. And just the facts of the crimes are brutal. And this Court has recognized in some cases that the brutality of the crime overcomes or can certainly undermine any effect of additional mitigation. And I would submit that the mitigation in this case that was the property of the district court, that was the only one it had before to make its ruling, was basically the same as had been presented to the State court. And the State court had found that it was cumulative. It would have made a difference. So if PCR counsel had argued this as an ineffective assistance claim, the State court would have surely found that still it was cumulative. I mean, cumulative is cumulative, whether in the context of ineffective assistance or in the context of newly discovered evidence. I'm prepared to address any other issues if the Court has any questions. On the confrontation, there was one other aspect of the confrontation clause argument, which had to do with, I guess it was Sergeant Dominguez, is that it? Detective? Detective. Yeah, I think you just promoted him. Yeah. Yes, correct. Yeah, there were two aspects of that. One was Detective Dominguez, who had actually been to the scene and observed some things himself. And then they both attended the autopsy with Detective Paul, who wrote the report. And then Dominguez signed the report, and then that report was one of the things that Dr. King could have considered, but he didn't consider it. He said, oh, I don't care what's in a police report. I'm not going to rely on that. And the Arizona Supreme Court found that that was harmless. Any confrontation violation was harmless. And the United States Supreme Court in Davis v. Ayala has recently said that when the state court makes a harmless error determination, that that also gets deference. It had been kind of an open question before that, do you just do Brecht in that case, or do you actually apply some more deference to the state court harmless error determination? And in Ayala, the Supreme Court made clear that you defer to that decision also. And I think that is that error, that harmless error determination was reasonable here. If there's no more questions, I would ask the Court to affirm the judgment and order of the district court. The arguments that my friend has made with regard to whether we should obtain an evidentiary hearing are arguments that should be made at the district court. He spent several minutes arguing to the court factual conclusions. Mr. Anderson referred to the MRI in this case and the PET scan as some pictures. And the government is trying to get this court to make a decision on a question that has never been developed factually, ever. And under Martinez, we have raised a colorable claim that there was ineffective assistance of post-conviction counsel and that there was ineffective assistance of trial counsel. Whether we succeed in that claim is not the question before this Court. It's whether we are entitled to develop it. And we have argument from the government here that is filled with supposition. Well, this probably means that and this probably means that. That proves our point. In a case of this magnitude and this seriousness, it cannot be based, the decision cannot be based on pure supposition. With regard to the E-6 aggravator, the government argues that Walton controls. But again, Walton expressly said that it was limiting itself to application to, that the aggravating factor in that case survived only because the judges were making the decisions. And then the government further says when the. It's not enough to distinguish, Walton, what Supreme Court case can we hold onto to say that the Arizona determination was unreasonable? Your Honor, Godfrey v. Georgia and Maynard v. Cartwright both hold, and they predate Walton, that if you have jury sentencing in a capital case, that the State court must both narrowly limit its aggravating factors and must properly instruct the jury. And in this. But in those cases, the jurors were instructed just in the terms of the statute. That's not what happened here. No. In this case, the jurors were given, and in fact, Mr. Anderson refers to the cruel heinous, excuse me, the heinous and depraved finding. The jury was instructed in what amounted to legal mush. The jury here was told these are the things that you find for heinous or depravity, but they're separate, but you find the same things, and if you find one, it's enough. That does not satisfy the dictates of the Eighth Amendment. And that is our argument. So how should they have been instructed? They should have been instructed under the limiting analysis that had been performed that had been conducted by the Arizona Supreme Court over its many years. And there are more specific definitions for cruelty, for heinous and depravity. I would suggest. The Arizona Supreme Court is entitled to define the statutory elements as it seems to be appropriate. Certainly. To the point that it violates the Eighth Amendment in due process, which is when the Federal courts must step in, which is what the U.S. Supreme Court has always studied. This is not a question of State law. It is a question of whether the State is. I mean, the judge here didn't just instruct the jury in terms of the statute, heinous. But clearly established Federal law in the form of Godfrey and Maynard State that if. Narrowing is required. But what tells us that the narrowing, I mean, that's that high level of abstraction. The Supreme Court regularly tells our Court and others you can't work from that level. Do we have anything more specific to hold on to with regard to the instructions given here? Yes, Your Honor. In Jeffers v. Lewis, which is actually an Arizona case, Justice O'Connor held that the courts must narrow the aggravating factor and apply the narrowing construction in the particular case. Our argument with regard to the E6 aggravating factor is that it did not, under the words of Jeffers, apply the narrowing construction in this case. The jury was improperly instructed on heinousness and depravity. We also suggest and that the we also argue that the cruelty instruction was unconstitutionally vague. The way the jury was instructed on cruelty would apply to virtually every first-degree murder. It does not narrow. It does not narrow. I would also like to address. It pretty much only rules out the unconscious victim. The unconscious victim would be excluded. A conscious victim who can perceive what's coming would seem to fall within the so-called narrow definition. What makes that insufficient narrowing? A conscious victim who for any amount of time could experience either physical pain or mental suffering would cover virtually every, with the exception of the rare instance in which you have an unconscious victim who is then murdered, would apply to virtually every first-degree murder case. And that is our argument as to why that it is overbroad in this case. Now, there was some discussion with regard to the E2 aggravator and about the argument that was presented to the Arizona Supreme Court. I would like to be clear that our argument is that the constitutional error in this case occurred in the Arizona Supreme Court. The Arizona Supreme Court committed the error. They failed to fulfill their obligations under the Eighth Amendment in due process by properly narrowing. This is not a question of State law. If the Arizona Supreme Court held that securities fraud was a crime necessarily involving the act of violence, and in this Court we're able to see that it does not, that would be a constitutional violation. It would be failure to comply with Gregg. And then with regard to the confrontation clause question and Judge Paya's, there was some discussion about was there really a factual finding here. And the government keeps saying that this is really a legal finding. It was, was Dr. Keene a conduit or was he not a conduit? And he, the government suggests that the factual finding must be related to a Federal constitutional issue. But D2 says that if a decision is based on an unreasonable determination of the facts as presented in State court, then we have satisfied our obligation under 2254d. In this case, the Arizona Supreme Court expressly found that Dr. Keene made an independent finding regarding the cause of death. And in that way, they said that he was simply an expert opining on information that he had before him. Breyer. Well, their determination that he was an expert is a legal determination, correct? But they are factually incorrect, Your Honor, that he made an independent finding on the cause of death. He did not. And in that set forth, the government's, excuse me, the Arizona Supreme Court's finding could be seen at ER 105 where they say that he independently concluded the cause of death and that the stab wounds inflicted near the time of death. He did not. He expressly stated he was not finding those independently. That could be found at ER 534, 534. Dr. Keene said he did not reach independent conclusions. The government's, the Arizona Supreme Court's finding, therefore, it's made incorrect findings, based its decision on this Confrontation Clause issue on patently incorrect factual findings. But, you know, the problem that I see, a major hurdle for you, is that basically you're asking us to disagree with the Arizona Supreme Court's factual determination, that it's unreasonable. No, we are not, Your Honor. I'm telling you, we are. That's what you are. You're saying you're telling us. Well, this Court can. There's no, you don't point, there's nothing here to suggest that there was an inadequate fact-finding process. Right? I'm not sure I understand your question. Your claim is based solely on all the evidence that's in the record. Yes. Right? Yes. You don't claim that there was some improper fact-finding that took place. No, Your Honor. But our argument is that the In the process. Not in the process. Right. No. The error is in that the Arizona Supreme Court based its decision on an erroneous factual, factual conclusion that was not supported by the evidence. The evidence was clearly contrary. And that is a finding this Court can easily make. Just look at the two, the two ER sites that we've given you, and you see that Dr. Keene said, I didn't reach an independent conclusion on cause of death. The Arizona Supreme Court says, it's okay, he reached an independent conclusion. He did not. Well, I thought he opined that he basically agreed with Karnichnig. Karnichnig is, I think, how you say it. What he said was, I don't have any reason not to disagree with him because I don't have much information. And he, when pressed by defense counsel on cross-examination, actually on voir dire, he expressly said, I am not reaching an independent finding. On cause of death. And that is what the Arizona Supreme Court said happened. It is an incorrect finding of fact. We've satisfied D2. This Court can, therefore, review the issue de novo. But then what happens? I mean, suppose we do. I mean, to begin with, with regard to cause of death, is there an alternative explanation that's on offer? I mean, it's pretty plain, isn't it, how she died, how they died? I guess, which one is this? Anyway, how that victim died. Both victims, in fact, died in similar matters. And so I'm not sure I hear what you're saying, if we parse it that way, but I'm not sure it matters. It does, Your Honor, because what happened then is this Court would then look at the Confrontation Clause issue de novo. It would not be bound by whether it applies in the capital sentence context. That I understand. But in terms of the finding of fact, it's not like there was another alternative on offer. And that is not the analysis. The issue is whether the Confrontation Clause was violated. If this Court finds it, I guess your question goes to a question, is it a direct harmless error. And in that instance, I would think in a capital case in which the jury is finding whether someone should be sentenced to death, the cause of death is a — the victim's death is an incredibly important and would have a substantial and injurious effect. I've run out of time, so unless there's other questions. Thank you. Roberts. Thank you, counsel. We appreciate your argument. And the matter is submitted.
judges: Paez, Clifton, Owens